# EXHIBIT A

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call/Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $250,000.00 | 06-24-2003 | 01-01-2006 | | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Net Charge, Inc
2215 Highway 45 North, Suite A
Meridian, MS 39301

**Lender:** The Bancorp Bank
Main Office
405 Silverside Road, Suite 105
Silverside-Carr Corporate Center
Wilmington, DE 19809

---

**Principal Amount: $250,000.00**  **Initial Rate: 4.250%**  **Date of Note: June 24, 2003**

**PROMISE TO PAY.** Net Charge, Inc ("Borrower") promises to pay to The Bancorp Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Fifty Thousand & 00/100 Dollars ($250,000.00), together with interest on the unpaid principal balance from June 24, 2003, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 30 payments of $8,814.02 each payment. Borrower's first payment is due August 1, 2003, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on January 1, 2006, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate, which is defined as the highest "Prime Rate" published in the "Money Rates" section of the Wall Street Journal (the "Index"). The index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each time the Index changes, with changes effective immediately. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 4.250% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate equal to the Index, rounded up to the nearest 0.125 percent, resulting in an initial rate of 4.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: The Bancorp Bank, 405 Silverside Road, Suite 105 Wilmington, DE 19809.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 2.000 percentage points over the Index. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

# PROMISSORY NOTE
## (Continued)

Page 2

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment or failure to satisfy Lender's requirement in the Insufficient Market Value of Securities section is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured (and no event of default will have occurred) if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Lender may also recover from Borrower all court, alternative dispute resolution or other collection costs (including, without limitation, fees and charges of collection agencies) actually incurred by Lender.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Delaware. This Note has been accepted by Lender in the State of Delaware.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by Security Agreement and/or Assignment (whichever is applicable) of even date which is a part hereof.

**CONFESSION OF JUDGMENT.** BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY-AT-LAW TO APPEAR IN ANY COURT OF RECORD AND TO CONFESS JUDGMENT AGAINST BORROWER FOR THE UNPAID AMOUNT OF THIS NOTE AS EVIDENCED BY AN AFFIDAVIT SIGNED BY AN OFFICER OF LENDER SETTING FORTH THE AMOUNT THEN DUE, REASONABLE ATTORNEY'S FEES PLUS COSTS OF SUIT, AND TO RELEASE ALL ERRORS, AND WAIVE ALL RIGHTS OF APPEAL. IF A COPY OF THIS NOTE, VERIFIED BY AN AFFIDAVIT, SHALL HAVE BEEN FILED IN THE PROCEEDING, IT WILL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OF ATTORNEY. BOROWER WAIVES THE RIGHT TO ANY STAY OF EXECUTION AND THE BENEFIT OF ALL EXEMPTION LAWS NOW OR HEREAFTER IN EFFECT. NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO CONFESS JUDGMENT WILL BE DEEMED TO EXHAUST THE POWER, WHETHER OR NOT ANY SUCH EXERCISE SHALL BE HELD BY ANY COURT TO BE INVALID, VOIDABLE, OR VOID; BUT THE POWER WILL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS LENDER MAY ELECT UNTIL ALL AMOUNTS OWING ON THIS NOTE HAVE BEEN PAID IN FULL.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: The Bancorp Bank Silverside-Carr Corporate Center Wilmington, DE 19809

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

# PROMISSORY NOTE
## (Continued)

Page 3

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

NET CHARGE, INC

_____ (Seal)
David Nettles, President of Net Charge, Inc

_____ (Seal)
Mary Newell Corkern, Vice President of Net Charge, Inc

LASER PRO Lending, Ver. 5.22.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2003. All Rights Reserved. - DE C:\LPC\FI\LPL\D20.FC TR-288 PR-9

# EXHIBIT B

## DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $250,000.00 | 06-24-2003 | 01-01-2005 | | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Net Charge, Inc
2215 Highway 45 North, Suite A
Meridian, MS 39301

**Lender:** The Bancorp Bank
Main Office
405 Silverside Road, Suite 105
Silverside-Carr Corporate Center
Wilmington, DE 19809

**LOAN TYPE.** This is a Variable Rate Nondisclosable Loan to a Corporation for $250,000.00 due on January 1, 2006. The reference rate (Wall Street Journal Prime Rate, which is defined as the highest "Prime Rate" published in the "Money Rates" section of the Wall Street Journal, currently 4.250%) is rounded up to the nearest 0.125 percent, resulting in an initial rate of 4.250.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Personal, Family, or Household Purposes or Personal investment.

☒ Business (Including Real Estate Investment).

**SPECIFIC PURPOSE.** The specific purpose of this loan is: To clear checking account overdrafts.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $250,000.00 as follows:

| | |
|---|---|
| Amount paid to Borrower directly: | $250,000.00 |
| $250,000.00 Deposited to Checking Account # 191041475 | |
| Note Principal: | $250,000.00 |

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED JUNE 24, 2003.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**BORROWER:**

NET CHARGE, INC

_____ (Seal)
David Nettles, President of Net Charge, Inc

_____ (Seal)
Mary Newell Corkern, Vice President of Net Charge, Inc

LASER PRO Lending, Ver. 5.22.00.005 Copr. Harland Financial Solutions, Inc. 1997, 2003. All Rights Reserved. - DE C:\LPL\CFI\LPL\I20.FC TR-255 PR-5

# EXHIBIT C

# PLEDGE AND CONTROL AGREEMENT

THIS PLEDGE AND CONTROL AGREEMENT (the "Agreement"), dated this 24th day of June, 2003, but effective as of June 24, 2003, is by and among _____ ("Broker"), **The Bancorp Bank** ("Lender") and **William R. and Carol J. Nettles** ("Grantor").

### BACKGROUND

Lender has agreed to make a loan (the "Loan") to Net Charge, Inc in the amount of $250,000.00 which Loan is evidenced by a note (together with any and all amendments thereto, the "Note") in the amount of the Loan. To induce Lender to make the Loan, Grantor has agreed, *inter alia*, to grant Lender a first perfected security interest in certain investment property of Grantor maintained in a securities account with Broker.

NOW THEREFORE, the parties, intending to be legally bound hereby, agree as follows:

1. <u>*Grant of Security Interest.*</u> Grantor presently maintains with Broker, securities account # _____ ( the "Account"), consisting of cash, marketable securities, treasury bills and other Investment Property (as such term is defined in Articles 8 and 9 of the Delaware Uniform Commercial Code) in the estimated aggregate value of $229,000.00 as stated in the personal financial dated May 3, 2003(all such property, whether now existing or hereafter acquired, together with all Income and Proceeds (defined below) thereof, collectively, the "Securities"). As collateral for the Note, and all other obligations of Borrower and Grantor to Lender of any kind whatsoever, whether now or hereafter existing, Grantor hereby assigns and pledges to Lender, and grants Lender a first priority security interest in, the Account and the Securities therein, and any proceeds thereof, limited to $229,000.00 (the "Pledged Amount"). The term "Income and Proceeds" is defined as all present and future income, proceeds, earnings, increases, and substitutions from or for any of the Securities, of every kind and nature, including without limitation, all payments, interest, profits, distributions, benefits, rights, options, warrants, dividends, stock dividends, stock splits, stock rights, regulatory dividends, subscriptions, monies, claims for money due and to become due, proceeds of any insurance, shares of stock of different par value or no par value issued in substitution or exchange for shares included in the Securities, whether voluntary or involuntary, by agreement or by operation of law, and all other property Guarantor is entitled to received on account of any of the Securities, including accounts, documents, instruments, chattel paper, investment property, and general intangibles.

2. <u>*The Account.*</u> Lender shall possess all right, title and interest in the Account, the Securities therein, and all proceeds thereof, limited to the Pledged Amount. Broker shall be Lender's agent for the purpose of holding the Securities in the Account, and their proceeds. The Account shall be titled "The Bancorp Bank – Collateral Account Re: William R. & Carol J. Nettles" so that Lender shall be the Entitlement Holder (as such term is defined in

Article 8 of the Delaware Uniform Commercial Code). The Account and the Securities shall be under the sole dominion and control of Lender, and, except as provided for in section 3 of this Agreement, neither Grantor, nor any person or entity claiming by, through or under Grantor, shall have any right, title or interest in, or control over the Account, except for amounts above the Pledged Amount. Broker hereby agrees that it shall comply with Entitlement Orders (defined in Article 8 of the Delaware Uniform Commercial Code) originated by Lender without further consent by Grantor.

3. *Grantor's Ability to Trade; Notice of an Event of Default*. Notwithstanding the fact that Lender has "control" (as such term is defined in Articles 8 and 9 of the Delaware Uniform Commercial Code) over the Account and the Securities therein, Lender hereby authorizes Grantor to make substitutions for Securities in the Account and to originate instructions to Broker so long as:

(a) The effect of such substitutions or instructions would not reduce the aggregate value of the Securities or the Account below the Pledged Amount; and

(b) The Securities at all times consist only of cash or readily marketable equity or debt securities traded on the New York Stock Exchange, American Stock Exchange, or National Association of Securities Dealers, Inc. Automated Quotation System – National Market Securities; and

(c) No Security by itself or collectively from any one issuer shall represent more than ten percent (10%) of the Securities, and no single industry shall represent more than fifteen percent (15%) of the Securities; and

(d) The proceeds of the sale, substitution or other disposition of any Securities are placed in the Account and become subject to this Agreement; and

(e) Lender has not notified Broker that an event of default, or an event which with the passing of time or giving of notice, or both, would become an event of default, has occurred under the Note or any other document with respect to the Loan, and that Lender has curtailed the authority given to Grantor in the paragraph 3 (such notice, a "Notice of Default"). If Lender gives Broker a Notice of Default, either in writing or orally, Lender shall immediately thereafter have the *exclusive* right to instruct Broker with respect to the Account and the Securities therein.

Likewise, if, at any time, the aggregate value of the Securities or the Account falls below the Pledged Amount, Lender shall immediately thereafter have the exclusive right to instruct Broker with respect to the Account and the Securities therein. In addition, Grantor shall immediately deposit additional collateral or make such payments to reduce the Loan as shall be satisfactory to Lender. Failure of Grantor to furnish such additional collateral or make such payments within twenty-four (24) hours shall constitute an event of default under the Note and shall result in Lender's option to make immediate demand for payment in full of the Loan and thereafter to liquidate the Account and apply the proceeds thereof to the Loan.

4. *Duties of Broker.* Broker accepts and agrees to the following duties:

(a) Broker shall immediately and automatically place any new Investment Property purchased by Grantor from Proceeds of the Account, into the Account; such new Investment Property shall be subject to this Agreement and shall constitute Securities hereunder; and

(b) Broker shall send Lender confirmation of all purchases of Securities into the Account; and

(c) Broker shall provide Lender with copies of all ongoing regular reports and statements issued with respect to the Account and such further information as Lender may reasonably request from time to time; and

(d) Broker shall mark its books and records to show Lender as the entitlement holder of the Account, and to reflect Lender's first perfected security interest in the Account, the Securities therein, and any and all proceeds thereof.

(e) Broker represents and warrants to Lender that it is a "securities intermediary" as such term is defined under Section 8102(a) of the Delaware Uniform Commercial Code.

5. *Indemnity.* Grantor hereby agrees to pay, indemnify and hold Broker harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever (including, without limitation, legal fees) with respect to the performance of this Agreement by Broker or any of Broker's directors, officers, agents, or employees, unless arising form its or their own gross negligence or willful misconduct.

6. *Fees and Expenses.*

(a) Grantor hereby agrees to pay any additional incremental fees and expenses of Broker which are caused by reasonable instructions given Broker by Lender hereunder.

(b) Broker will advise Lender should Grantor fail to pay any fees and expenses assessed against Grantor hereunder. Failure to pay such fees or expenses shall not affect the validity or enforceability of this Agreement or terminate or modify Broker's duties hereunder.

7. *Limitations on Liability of Broker.* Notwithstanding any other provision of this Agreement, it is agreed by the parties hereto that Broker shall not be liable for any action taken by it or any of its directors, officers, agents, or employees in accordance with this Agreement except for its or their own gross negligence or willful misconduct.

8. *Irrevocable Instructions.* Grantor acknowledges that the agreements made by it and the authorizations granted by it herein are irrevocable unless otherwise agreed to in writing by Lender and that the authorizations granted herein are powers coupled with an interest.

3

9. *Waiver of Right of Set-off and Liens*. With respect to the Account and the Securities therein and proceeds thereof, Broker waives, for its own account, and as agent for any Third Party (defined below), all existing and future rights of set-off and liens against the Account, the Securities therein and proceeds thereof which Broker may now or in the future have against Grantor or any affiliate thereof, *provided, however,* that Broker retains the right to charge the Account for all compensation and expenses with respect to the Account, so long as such charges will not cause the aggregate value of the Account to fall below the Pledged Amount. The waiver in the paragraph 9 includes, without limitation, any rights granted to Broker in any agreements between Grantor and Broker used to establish the Account or otherwise. This waiver is and shall remain in effect for so long as Grantor and/or Borrower are indebted to Lender.

10. *Negative Pledge*. Grantor shall not borrow any funds from Broker or any person or entity performing subcustodial, safekeeping, clearing, settlement or other services or transactions in connection with the Account, including, without limitation, a branch of any United States bank or any entity that may be affiliated with a United States Bank (each, a "Third Party"). In addition, neither Grantor nor Broker shall enter into a control or other tri-party agreement with respect to the Account, the Securities therein or proceeds thereof, with any person or entity other than Lender.

11. *Remedies*.

(a) Upon the occurrence of any Event of Default under the Note or any other Loan document, in addition to any other remedies set forth herein, Lender may, at its option, exercise any or all rights and remedies available to Lender under the Delaware Uniform Commercial Code or otherwise available to it. All costs and expenses including, without limitation, reasonable attorney's fees, agency fees and registration fees incurred or paid by Lender in exercising any right, remedy or power conferred hereunder and in the enforcement hereof shall be paid by Grantor.

(b) The proceeds of any Securities in the Account disposed of by Lender at any time may be applied to or on account of payment of the Note and in such order as Lender may elect. In addition, Lender may, at its discretion, apply any such proceeds to or on account of the payment of any costs and expenses (including reasonable attorney's fees, legal expenses and registration costs) incurred by Lender in the custody, preservation, use operation, preparation for sale, or in the enforcement of the documents related to the Loan or of the pledge and security interest created hereby. Grantor waives and releases any right to require Lender to collect any sums due under the Note from any other collateral securing the Note under any theory of marshalling of assets, or otherwise, and specifically authorizes Lender to apply any collateral against the Note in any manner Lender may determine.

12. *Effectiveness; Integration; Amendments*. This Agreement shall be effective as of the date first above written. This Agreement constitutes the entire agreement with respect to the subject hereof and is binding upon the parties hereto and their respect successors and assigns and shall inure to their benefit. Neither this Agreement nor any provision hereof may be changed, amended, modified or waived orally, but only by an instrument in writing signed by the

parties hereto. Any provision of this Agreement which may prove unenforceable under any law or regulation shall not affect the validity of any other provision hereof. If any terms, conditions or provisions of any other agreement between Broker and Grantor are inconsistent with the terms, conditions or provisions of this Agreement, the terms, conditions and provisions of this Agreement shall apply.

13. **_Termination_**. This Agreement shall automatically terminate on the date on which the Loan, and all other obligations of Grantor and Borrower to Lender have been paid in full and all commitments of Lender with respect thereto have been terminated. Broker shall be entitled to rely on a certificate of Lender to such effect.

14. **_Notices._** With respect to this Agreement, all notices (except for Notices of Default, which may be oral), requests and demands to or upon the respective parties hereto to be effective shall be in writing (including by telecopy or nationally recognized courier service), and shall be deemed to have been duly made or given when delivered by hand, or, in the case of telecopy notice, when sent or, in the case of a nationally recognized courier service, one business day after delivery to such courier service, addressed as follows, or to such other address as may be hereafter notified by the respective parties hereto:

Lender:	The Bancorp Bank
	1818 Market Street 28th Floor
	Philadelphia, Pa 19103
	Attn: Scott R. Megargee

Broker:	Terry E. Haddock
	AG Edwards & Sons, Inc.
	201 N. Court Street
	Florence, Al. 35630

Grantor:	William R. & Carole Nettles
	1444 Frederickson Road
	Meridian, MS 39305

15. **_Governing Law; Venue_**. This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of Delaware. The parties hereto hereby irrevocably submit to the non-exclusive jurisdiction of the courts of the State of Delaware, in any and all actions or proceedings arising hereunder or pursuant hereto.

**Notwithstanding any provision of any other agreement between Broker and Lender and/or Broker and Grantor (including without limitation, any agreements executed in conjunction with establishing the Account), the laws of the State of Delaware shall apply to attachment**

and perfection of Lender's security interest in the Account, the Securities therein and proceeds thereof.

16. *Counterparts*. This Agreement may be executed in any number of counterparts which together shall constitute one and the same instrument.

17. *Perfection*. The parties hereto intend that this Agreement constitute "control" under Articles 8 and 9 of the Delaware Uniform Commercial Code and cause Lender to have a perfected security interest in the Account, the Securities therein and proceeds thereof.

IN WITNESS WHEREOF, and intending to be legally bound, each of the parties hereto has caused this Agreement to be executed and delivered on the date first set forth above.

**LENDER:**

The Bancorp Bank

By: *[signature]*
Name: Scott R. Megargee
Title: Executive Vice President

Attest:_____

**BROKER:**

By: *Terry E. Haddock*
Name:
Title: V.P.

Attest:_____

**BORROWER:**

*[signature]* William R. Nettles
Name: William R. Nettles

*[signature]* Carol J. Nettles
Name: Carol J. Nettles

Attest:_____

6

# EXHIBIT D

PAGE 08/09
PAGE 04/08
THEBANCORP BANK
13023855194    09/24/2004    11:56
12158617898    06/25/2003    11:59



# A.G. Edwards & Sons, Inc.
### INVESTMENTS SINCE 1887

FOR THE PERIOD: April 26, 2003 – May 30, 2003

PAGE 1 OF 5

## ACCOUNT INFORMATION

WILLIAM R NETTLES &
CAROLE J NETTLES
JT TEN
1444 FREDERICKSON RD
MERIDIAN MS 39305-9139

**BRANCH ADDRESS:**
201 N COURT STREET
FLORENCE AL 35630

**PHONE:**
(256) 764-1000

## FOR YOUR CONSIDERATION

If you are an investor looking to generate income from your portfolio to combat the increasing cost of living, consider dividend-paying investments. A. G. Edwards offers a number of investment strategies designed to provide current income and potentially increase your income over time. For more information about these strategies, contact your financial consultant.

You can track your dividend income using the Estimated Income feature available through our online account access service, AGe-connect. Available free of charge to clients, AGe-connect lets you view the projected income for any of your A. G. Edwards accounts. Sign up today at www.agedwards.com.

## PORTFOLIO AT-A-GLANCE



YOUR ALLOCATION ON
05/30/2003
TOTAL ACCOUNT VALUE
$240,254.51

| | Value on 04/25/2003 | % | Value on 05/30/2003 | % | Net Change |
|---|---:|---:|---:|---:|---:|
| Cash & Money Fund | 123.25 | 0.05 | 0.00 | 0.00 | -123.25 |
| Equities | 127,016.49 | 55.43 | 135,651.52 | 55.80 | 8,635.03 |
| Taxable Bonds | 62,417.20 | 27.24 | 64,854.15 | 26.67 | 2,436.95 |
| Mutual Funds | 39,599.51 | 17.28 | 42,630.98 | 17.53 | 3,031.47 |
| **Total Portfolio Holdings** | **$229,156.45** | **100.00%** | **$243,136.68** | **100.00%** | **$13,980.20** |
| Cash You Owe Us | 0.00 | | -2,882.14 | | -2,882.14 |
| **Total Account Value** | **$229,156.45** | | **$240,254.51** | | **$11,098.06** |

PAGE 09/09



# A.G. Edwards & Sons, Inc.
### INVESTMENTS SINCE 1887

FOR THE PERIOD: **April 26, 2003 - May 30, 2003**   *Primary Investment Objective - Growth Aggressive*   PAGE 2 OF 5

## CASH FLOW SUMMARY

|  | This Period | Year to Date |
|---|---:|---:|
| Beginning Balance | $123.25 | |
| Income | 741.54 | 5,903.00 |
| Deposits/Transfers In | | 3,631.18 |
| Withdrawals/Transfers Out | -3,741.54 | -8,664.25 |
| Margin Interest | -5.39 | -5.39 |
| Dividends Reinvested | | -238.75 |
| Ending Balance | -$2,882.14 | |
| Net Change | -$3,005.39 | |

## INCOME SUMMARY

|  | This Period | Year to Date |
|---|---:|---:|
| **Taxable** | | |
| Dividends | 741.54 | 3,597.72 |
| Interest | | 2,138.28 |
| Total Taxable | $741.54 | $5,736.00 |
| Income reported last year and paid this year | | $167.00 |
| Total Income | $741.54 | $5,903.00 |

## PORTFOLIO HOLDINGS

| Quantity | Description | Symbol | % of Account | Current Price | Current Value | Estimated Annual Income | % Yield | Type |
|---:|---|---|---:|---:|---:|---:|---:|---|
| **CASH & MONEY FUND** | | | | | | | | |
| | CASH YOU OWE US | | | | -2,882.14 | | | |
| | **TOTAL CASH & MONEY FUND** | | | | -$2,882.14 | | | |
| **EQUITIES** | | | | | | | | |
| 100 | ALLIED CAPITAL CORP NEW | ALD | | | 2,335.00 | 228 | | C |
| 200 | | | | | 4,670.00 | 456 | | M |
| 300 | Asset Total | | 2.88 | 23.35 | 7,005.00 | 684 | 9.76 | |
| 162.042 | ALTRIA GROUP INC | MO | 2.75 | 41.30 | 6,692.33 | 415 | 6.20 | C |
| 350 | *AMERICAN CAP STRATEGIES LTD | ACAS | 3.95 | 27.44 | 9,604.00 | 952 | 9.91 | C |
| 570 | CHARTWELL DIVIDEND & INCOME FD | CWF | | | 4,845.00 | 570 | | C |
| 360 | | | | | 3,060.00 | 360 | | M |
| 930 | Asset Total | | 3.25 | 8.50 | 7,905.00 | 930 | 11.76 | |
| 1,270 | CREDIT SUISSE ASSET MANAGEMENT INCOME FUND INC | CIK | | | 5,918.20 | 572 | | C |
| 575 | | | | | 2,679.50 | 259 | | M |
| 1,845 | Asset Total | | 3.54 | 4.66 | 8,597.70 | 831 | 9.67 | |
| 150 | EMC CORPORATION (MA) | EMC | 0.67 | 10.82 | 1,623.00 | | | M |

09/24/2004 11:56  1302385S194

# EXHIBIT E

# NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $250,000.00 | 06-24-2003 | 01-01-2006 | | | | *** | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Net Charge, Inc
2215 Highway 45 North, Suite A
Meridian, MS 39301

**Lender:** The Bancorp Bank
Main Office
405 Silverside Road, Suite 105
Silverside-Carr Corporate Center
Wilmington, DE 19809

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

**As used in this Notice, the following terms have the following meanings:**

**Loan.** The term "Loan" means the following described loan: a Variable Rate Nondisclosable Loan to a Corporation for $250,000.00 due on January 1, 2006. The reference rate (Wall Street Journal Prime Rate, which is defined as the highest "Prime Rate" published in the "Money Rates" section of the Wall Street Journal, currently 4.250%) is rounded up to the nearest 0.125 percent, resulting in an initial rate of 4.250.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

Corporate Resolution: Net Charge, Inc
Promissory Note
MS Commercial Pledge Agreement: Mutual Fund; owned by Nettles and Nettles
Disbursement Request and Authorization
Business Loan Agreement
DE Commercial Guaranty: David Nettles
MS Acknowledgment of Pledge and Security Interest: Mutual Fund
Irrevocable Stock or Bond Power: Mutual Fund
Notice of Final Agreement

**Parties.** The term "Parties" means The Bancorp Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

| | |
|---|---|
| Borrower: | Net Charge, Inc |
| Grantor(s): | William R. Nettles and Carol J. Nettles |
| Guarantor 1: | David Nettles |

**Each Party who signs below, other than The Bancorp Bank, acknowledges, represents, and warrants to The Bancorp Bank that it has received, read and understood this Notice of Final Agreement. This Notice is dated June 24, 2003.**

**THIS NOTICE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTICE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**BORROWER:**

**NET CHARGE, INC**

_______________ (Seal)
David Nettles, President of Net Charge, Inc

Mary Newell Corkern (Seal)
Mary Newell Corkern, Vice President of Net Charge, Inc

**GRANTOR:**

William R. Nettles (Seal)
William R. Nettles, Individually

Carola J. Nettles (Seal)
Carol J. Nettles, Individually

**GUARANTOR:**

_______________ (Seal)
David Nettles, Individually

## NOTICE OF FINAL AGREEMENT
(Continued)

Page 2

**LENDER:**

THE BANCORP BANK

X ___Scott A Megargee___
Authorized Signer

LASER PRO Lending, Ver. 5.22.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2003. All Rights Reserved. - DE G:\LPL\CFNLPL\G31.FC TR-266 PR-6